**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re ROBIN GARRETT TOMER, ) | Case No. 08-61265 |
| ) | |
| Debtor, ) | |
| _____ ) | |

**SUPPLEMENTAL MEMORANDUM**
**ISSUED PURSUANT TO REMAND**

This matter comes before the Court on an order of remand issued from the United States District Court for the Western District of Virginia ("The District Court") directing this Court to render specific findings of fact as to whether Robin Garret Tomer ("the Debtor") filed her chapter 13 petition in good faith as is required under 11 U.S.C. § 1325(a)(7) for plan confirmation.

*Facts*

From February 2006 until March 23, 2007, the Debtor was employed by Romar Elevators, Incorporated ("Romar"). In March of 2007, she terminated her employment with Romar. Before officially resigning her position with Romar, she transferred proprietary information from Romar to her personal computer. Shortly thereafter, Romar filed a civil suit against the Debtor.

On February 14, 2008, the jury rendered a civil verdict in favor of Romar finding the Debtor liable for damages. On April 7, 2008, a judgment order ("the Civil Judgment") was entered in favor of Romar in the Circuit Court of the City of Danville in the State of Virginia awarding compensatory damages in the net amount of $171,000.00 ($175,000.00 less an offset of $4,000.00). The jury did not award any punitive damages.

1

On August 18, 2008, the Defendant was indicted in the Pittsylvania Circuit Court for criminal embezzlement arising from the same facts that gave rise to the civil suit. The Court, sitting without a jury, dismissed the indictment based on the Commonwealth's failure to meet its burden of showing that the Debtor's act had resulted in loss of value.

During this time, the Debtor and her husband owned real property ("the Real Property"). They did not own the property as tenants by the entirety. The property was assessed for tax purposes at $68,500.00. The property secured a note in the amount of $90,671.70. On February 18, 2008, the Debtor and her husband transferred the Real Property to her husband's father for $91,000.00. The sales proceeds were used to pay off the mortgage in full. The Debtor disclosed the transfer in her statement of financial affairs.

On May 22, 2008, the Debtor purchased a new Toyota Yaris vehicle ("the Yaris") for $15,500.00. The payment amount on the loan is $390.00 per month. The Debtor disclosed the Yaris in her schedules.

On May 30, 2008, the Debtor filed the above-styled petition. She scheduled unsecured debt in the amount of $286,481.00, including $171,000.00 owed to Romar and $94,843.00 to family members. She scheduled the Yaris as property of the estate and disclosed the transfer of the Real Property to her father-in-law.

Post-petition, the Debtor filed a petition initiating an appeal ("the Appeal") of the Civil Judgment with the Supreme Court of Virginia. Romar responded by filing a motion with the Supreme Court of Virginia to dismiss the appeal on the grounds that the Debtor's petition for appeal was filed in violation of the automatic stay imposed by Section 362 of the Bankruptcy

Code.[1]  On August 7, 2008, the Debtor filed a motion to lift the automatic stay, *nunc pro tunc*, to permit both the Debtor and Romar to continue the prosecution of the Appeal before the Supreme Court of Virginia.  This Court granted the motion for relief from the stay to permit the parties to prosecute the appeal.  The Supreme Court affirmed the Civil Judgment.

The Debtor filed a proposed chapter 13 plan, which has been amended.  The amended plan provides for payments in the total amount of $55,352.00 to the chapter 13 trustee during the 60-month pendency of the plan.  The Debtor's total disposable income during the sixty-month period according to the means test [2] calculation is $23,458.20.  On July 2, 2008, Romar filed an objection to the confirmation of the chapter 13 plan.  The objection was filed on the grounds that the plan was not filed in good faith and that the petition was not filed in good faith.  This Court confirmed the plan over the objection of Romar and Romar appealed to The District Court.  The District Court remanded the matter to this Court for findings of fact concerning whether the Debtor filed her petition in good faith.

Romar has also filed an adversary complaint objecting to the discharge of the debt arising from the Civil Judgment.

*Discussion*

The District Court remanded this appeal to this Court with instructions to make factual

---

[1] The filing of a petition in bankruptcy operates as a stay against the commencement or continuation of certain acts against the debtor, property of the debtor, and property of the estate.  11 U.S.C. § 362(a).  Romar's motion to dismiss the appeal before the Supreme Court of Virginia was itself a violation of the stay.

[2] The means test is set forth in Section 707(b)(2)(A)&(B) of the Bankruptcy Code.  A debtor's disposable income is to be calculated using the expenses described in these subparagraphs.  See 11 U.S.C. § 1325(b)(3).  Section 707(b)(2)(A)&(B) requires that debtors use the National Standards and Local Standards issued by the Internal Revenue Service as well as expenses that are defined by the Internal Revenue Service as "Other Necessary Expenses."  See IRS Collection Financial Standards at http://www.irs.gov/individuals/article/0,,id=96543,00.html.

findings regarding whether the Debtor filed her petition in good faith as is required for plan confirmation under 11 U.S.C. § 1325(a)(7).

I.

Section 1325(a) contains two separate requirements of good faith before a chapter 13 plan may be confirmed. First, the debtor must have filed the plan in good faith. 11 U.S.C. § 1325(a)(3). Second, a the debtor must have filed the petition in good faith. 11 U.S.C. § 1325(a)(7). The scope of the inquiry under Section 1325(a)(7) must be greater than that under section 1325(a)(3) or there would be no purpose in adding the former section to the Bankruptcy Code.[3]

Section 1325(a)(7) was added as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[4] The statute itself provides no further guidance and no legislative history exists that might provide guidance to the meaning of "good faith" in new Section 1325(a)(7).

Because there is no legislative history and because there is a dearth of opinions on Section 1325(a)(7), it is proper to consult interpretations of bad faith under other provisions in the Bankruptcy Code in order to formulate a test. There are two Fourth Circuit opinions that provide such guidance, Colonial Auto Center v. Tomlin, (In re Tomlin), 105 F.3d 933 (4th Cir. 1997) and Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir. 1989).

In Tomlin, the debtor filed six bankruptcy petitions in seven years. The bankruptcy court dismissed the fifth case with prejudice. During the pendency of the sixth case, a creditor whose

---

[3] Cf. 6 Keith M. Lundin, Chapter 13 Bankruptcy 3d Ed. § 497.1 (2000 & Supp. 2006). "Good faith is an undefined concept that has taken more than 25 years to flesh out as it is used in § 1325(a)(3)" and "[i]t is not obvious that § 1325(a)(7) adds anything new."

[4] The Bankruptcy Code was revised effective October 17, 2005, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). See Pub. L. No. 109-8, 119 Stat. 23 (2005).

claim had arisen prior to the filing of the fifth case, filed an adversary complaint seeking to have its claim declared non-dischargeable. The creditor filed a motion for summary judgment arguing that the dismissal of the fifth case with prejudice barred the debtor from subsequently seeking to discharge debts that arose before the filing of the fifth petition. The argument was based in part on Section 349(a) which permits a court to "bar the discharge, in a later case . . . of debts that were dischargeable in the case dismissed." The Bankruptcy Court denied the motion for summary judgment. The creditor appealed and the United States District Court reversed the Bankruptcy Court. The Debtor appealed to the Fourth Circuit Court of Appeals.

The Fourth Circuit reversed the District Court and remanded the matter to the Bankruptcy Court. In doing so the Court noted:

> In any court, a dismissal order that bars subsequent litigation is a severe sanction warranted only by egregious misconduct. See Durham v. Florida E. Coast Ry. Co., 385 F.2d 366, 368 (5th Cir.1967) (citing Link v. Wabash R.R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). Given that the Bankruptcy Code's "central purpose" is remedial, i.e., to afford insolvent debtors an opportunity to "enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt,' " Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)), such an order is particularly devastating in a bankruptcy case. For this reason, a permanent bar to discharge is at times referred to as the "capital punishment of bankruptcy," for it "removes much of the benefit" of the bankruptcy system. In re Merrill, 192 B.R. 245, 253 (Bankr.D.Colo.1995).
> This "drastic sanction which may affect substantial rights of the litigant" is usually limited to "extreme situations." In re Martin-Trigona, 35 B.R. 596, 601 (Bankr.S.D.N.Y.1983) (citing Flaksa v. Little River Marine Constr. Co., 389 F.2d 885, 887 (5th Cir.1968)). Generally, *only if a debtor engages in egregious behavior that demonstrates bad faith and prejudices creditors* - for example, concealing information from the court, violating injunctions, or filing unauthorized petitions - *will a bankruptcy court forever bar the debtor from seeking to discharge then existing debts*. See, e.g., In re Moses, 171 B.R. 789, 793-94 (Bankr.E.D.Mich.1994); Martin-Trigona, 35 B.R. at 601-02; In re Jerry's Blue Room, 19 B.R. 963, 964 (Bankr.E.D.Pa.1982).

Tomlin, 105 F.3d at 937 (Emphasis added.).

In the case at bar, if the plan is not confirmed, the Debtor will be effectively banned forever from paying her debts through a chapter 13 plan and discharging all of her dischargeable debts through the prosecution of the chapter 13 case. This is so because the Debtor would have no way to undo the acts that she has committed in the past. Because the effect of denying confirmation of her chapter 13 plan is as drastic as the remedy sought by the creditor in Tomlin, this Court concludes that the Fourth Circuit would apply the same test under the circumstances in the case at bar as it did in Tomlin.

This conclusion is buttressed by the opinion of the Fourth Circuit Court of Appeals in Carolin, a chapter 11 case. In Carolin, a secured creditor moved to dismiss the case under Section 1112(b). The Bankruptcy Court granted the motion to dismiss and the District Court affirmed. The Debtor appealed and the Circuit Court considered the standard by which a bankruptcy court should determine whether a filing is not in good faith subjecting a chapter 11 case to dismissal at the threshold. Again, while the Bankruptcy Code section in Carolin is not exactly the same as that in the case at bar, a determination of the lack of good faith under Section 1112(b) or 1325(a)(7) will result in the dismissal of the case at its inception. A finding of bad faith sufficient to dismiss the case in Carolin or sufficient to deny confirmation of the plan in the case at bar would completely foreclose the debtor from reorganizing through performance under a plan of reorganization.

The Fourth Circuit first noted that some courts require a finding of objective futility in the prosecution of the plan and a finding of subjective bad faith on the part of the debtor, and that some courts require only one of these two findings. The Fourth Circuit sided with those courts that require both findings.

> . . . Upon consideration, we agree with those courts that require that *both* objective futility and subjective bad faith be shown in order to warrant dismissals for want of good faith in

> filing. This means that if the only question raised is whether a reorganization is realistically possible, i.e., if there is no question of the petitioner's subjective good faith in filing, threshold dismissal of a petition is not warranted. In those circumstances the question of ultimate futility is better left to post-petition developments. By the same token, even if subjective bad faith in filing could properly be found, dismissal is not warranted if futility cannot also be found.

Caroline, 886 F.2d at 701-701 (Emphasis in original.).

In Tomlin and Carolin, the Fourth Circuit Court of Appeals established two slightly different tests for examining the presence of good faith under two different sections of the Bankruptcy Code. In Tomlin, the Court held that a bankruptcy case should not be dismissed with prejudice so extreme that it bars the discharge of any pre-petition debts unless the debtor has acted in bad faith *and* those acts prejudiced the creditors' dividend. In Carolin, the Court held that a bankruptcy court should not dismiss a chapter 11 case unless the debtor has acted in bad faith *and* that it would be objectively futile to continue with the case. Both tests require a finding of bad faith. Tomlin also requires a finding that the debtor committed acts that are prejudicial to creditors, whereas Carolin also requires a finding that the plan is objectively futile.

The test in Tomlin places a greater burden on the debtor and is more appropriate in determining whether a petition has been filed in bad faith under Section 1325(a)(7). This court concludes that if the Fourth Circuit Court of Appeals were to construct a test for an inquiry into good faith under Section 1325(a)(7), it would adopt the test in Tomlin. Accordingly, it is concluded that confirmation of a chapter 13 plan should not be denied for the filing of a petition in bad faith unless the debtor engages in egregious behavior that (1) demonstrates bad faith and (2) prejudices creditors.

To determine a debtor's good faith under any test requires an inquiry into the totality of the circumstances. See Caroline, 886 F.2d at 701. Also see In re Eisen, 14 F.3d 469, 470 (9th Cir. 1994) (Citing In re Goeb, 675 F.2d 1386, 1391 (9th Cir.1982) (To determine good faith under

Section 1307(c) a bankruptcy judge must review the "totality of the circumstances.")).

Guidance regarding the factors to be considered may be taken from those opinions considering allegations of bad faith under Section 1307(c). Section 1307(c) permits a court to dismiss a chapter 13 case for cause. Cause has been interpreted to include a lack of good faith on the part of the debtor. Section 1325(a)(7) differs from Section 1307(c) only in that it makes denial of confirmation, rather than dismissal of the case, the consequence for acting in bad faith.

The Ninth Circuit and the Seventh Circuit have both suggested factors to be considered under Section 1307(c). In In re Leavitt, 171 F.3d 1219 (9th Cir. 1999), the Court summarized the four factors set forth by Court in Eisen to be considered in determining bad faith under Section 1307(c).

> The bankruptcy court should consider the following factors:
> (1) whether the debtor "misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner," I d. (citing In re Goeb, 675 F.2d 1386, 1391 (9th Cir.1982));
> (2) "the debtor's history of filings and dismissals," id. (citing In re Nash, 765 F.2d 1410, 1415 (9th Cir.1985));
> (3) whether "the debtor only intended to defeat state court litigation," id. (citing In re Chinichian, 784 F.2d 1440, 1445-46 (9th Cir.1986)); and
> (4) whether egregious behavior is present, Tomlin, 105 F.3d at 937; In re Bradley, 38 B.R. 425, 432 (Bankr.C.D.Cal.1984).

Leavitt, 171 F.3d at p. 1219 (Citing Eisen. 14 F.3d at 470.).

The Seventh Circuit has also suggest certain factors for consideration when determining the existence of bad faith under Section 1307(c).

> Keeping in mind that the *focus of the inquiry is fundamental fairness*, the following nonexhaustive list exemplifies some of the factors that are relevant when determining if a Chapter 13 petition was filed in good faith: the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors. See In re King, 126 B.R. 777, 781 (Bankr.N.D.Ill.1991) (involved good faith evaluation under 1307(c)); In re McKissie, 103 B.R. 189, 192 (Bankr.N.D.Ill.1989)

(same).  See also Schaitz, 913 F.2d at 455-56 (discussing factors relevant to the good faith determination under Section 1325(a)); Smith, 848 F.2d at 817-18 (same); Rimgale, 669 F.2d at 432 (same).

In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992) (Emphasis added.).[5]

As with any totality-of-the-circumstances test, the inquiry does not consist of a simple accounting.  Carolin, 886 F.2d at 701 ("The dangers of overemphasis on particular indicia or patterns, of engaging in mere indicia-counting, and of forcing particular facts into previously identified patterns is obvious, and must be guarded against.")   No single factor will necessarily lead to a finding of bad faith.  Id. Each factor is to be weighed and considered in light of the others. Owing to the myriad of possible fact scenarios, a factor that is of little relevance in one case may be determinative in another.

## II.

We turn now to the circumstances in this case and how they relate to the test, promulgated in Tomlin and adopted herein, that holds that confirmation of a chapter 13 plan should not be denied for the filing of a petition in bad faith unless the debtor engages in egregious behavior that (1) demonstrates bad faith and (2) prejudices creditors.

### A.

---

[5] The factors promulgated in Leavitt and Love may be listed as follows:
(1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner,"
(2) "the debtor's history of filings and dismissals,"
(3) whether "the debtor only intended to defeat state court litigation,"
(4) whether egregious behavior is present
(5) the nature of the debt, including the question of whether the debt would be  nondischargeable in a Chapter 7 proceeding;
(6) the timing of the petition;
(7) how the debt arose;
(8) the debtor's motive in filing the petition;
(9) how the debtor's actions affected creditors;
(10) the debtor's treatment of creditors before and after the petition was filed; and
(11) whether the debtor has been forthcoming with the court and the creditors.

First we examine whether the acts of the Debtor constituted bad faith sufficient to deny confirmation of this chapter 13 plan. Romar cites a number of circumstances and acts by the Debtor that it believes should be considered by the Court. They include the transfer of the Debtor's house to her husband's father, the purchase of a vehicle, the misappropriation of Romar's trade secrets, the two-party nature of this case, and the extent to which the Debtor is paying all of her disposable income through the plan.

There are two acts that are properly considered under the heading of egregious acts, the fourth factor in <u>Tomlin</u>. While this factor is very important to the analysis, a chapter 13 debtor's egregious pre-petition conduct does not give rise to presumption that the petition was filed in bad faith. <u>Love</u>, 957 F.2d at 1355.

The first act is the transfer of the Debtor's house to her husband's father. Romar asserts that this transfer constituted a fraudulent transfer. The property secured a note in the amount of $90,671.70. The house was transferred for $91,000.00. At the time, the property had a tax-assessed value of $68,500.00. After the transfer, the house was re-assessed at $71,700.00. There is no indication that the transfer, if fraudulent, would result in an award of money damages or yield money for the benefit of creditors. To the extent that the transfer was fraudulent, a complaint may be filed to avoid the transfer. If the transfer were avoided, then the amount of the transfer that is determined to be fraudulent would be used in the calculation of the minimum amount the Debtor must pay to comply with the best-interest-of-the-creditors test. <u>See</u> 11 U.S.C. § 1325(a)(4).

Because the Debtor has less than $8,000.00 in non-exempt property that does not serve as collateral for debts, and because the Debtor proposes to pay the chapter 13 trustee more than

$55,000.00, it is highly improbable that any avoidance of the transfer of the Debtor's residence will affect the amount that the Debtor is required to pay into the plan.

This Court doubts very seriously that a trustee in bankruptcy would sell the Real Property. Further, while the transfer appears to constitute a common law fraudulent conveyance under either Virginia state law or bankruptcy law[6], the lack of equity in the property rendered it an act without detrimental consequences to creditors. This Court does not believe that the transfer, in and of itself, constitutes an act of bad faith sufficient to deny confirmation of the chapter 13 plan.

Romar also asserts that the Debtor's recent purchase of a new car constitutes bad faith. Neither the purpose of this purchase nor the magnitude of the purchase supports a conclusion that this purchase rises to the level of egregious behavior. First, the purchase was justified. At the time, the Debtor and her husband owned only one vehicle, a vehicle with more than 100,000 miles on it. Her husband drove that vehicle. At the time the Debtor was permitted to drive her company vehicle for personal use. She testified[7] that her current employer wrote her a letter informing her that she could only use the company vehicle for business use. The Debtor's motive in purchasing the Yaris was to replace transportation that she had lost. It was not to avoid paying Romar addition funds under her chapter 13 plan.

Second, the purchase did not change the amount that the Debtor is required to pay under the chapter 13 plan. In chapter 13 a debtor's expenses are to be determined under the means test

---

[6] The Debtor admitted that she transferred the property to keep Romar from forcing its sale.

[7] The Court found the Debtor to be a credible witness, the misappropriation of the trade secrets notwithstanding. Her answers were consistent and included a number of admissions that were against her interest, even some, such as motive, that could not have been controverted by evidence.

allowances set forth in Section 707(b)(2)(A)&(B). 11 U.S.C. § 1325(b)(3).[8]  Section 707(a)(2)(A)&(B) provides that the expenses to be allowed are those that are allowed under the IRS guidelines. Under the IRS guidelines, a debtor in the Debtor's income classification is permitted to deduct $489.00 per month as her car payment expense, whether she actually is indebted for that payment amount or not. The Debtor's monthly car payment is $390.00, an amount that is less than the amount allowed under the IRS guidelines. And the chapter 13 trustee has not challenged this deduction in the calculation of disposable income. Further, the Yaris is far from being a luxury vehicle, as asserted by Romar. The Debtor testified that it is the least expensive Toyota available.[9]

Romar asserts in an adversary complaint filed in this case that the Debtor's act of misappropriation of trade secrets constitutes "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny", an act which would be non-dischargeable under Section 523(a)(4). The first factor in <u>Love</u> concerns whether the objecting creditor's debt would be non-dischargeable if the case were prosecuted under chapter 7 case. When the opinions were published that discussed this factor, there were a number of kinds of debts that could be discharged in chapter 13, but not in chapter 7. The kind of debt described in Section 523(a)(4) was one such kind of debt. However, debts that are non-dischargeable under Section 523(a)(4) in chapter 7 are now non-dischargeable under chapter 13. Consequently, this factor is no longer a factor to be considered in chapter 13 cases.

To the extent that Romar is arguing that the misappropriation of trade secrets was an act

---

[8] This applies only to debtors whose income is above the median income for a family of the same size in the state in which the debtor lives.

[9] The Yaris does not have cruise control, a feature that is almost standard on today's new vehicles.

that should be considered simply for its inherent egregious nature, the court disagrees. First, there is evidence that the severity of the act does not warrant such a characterization. This Court places significant weight on the fact that the State Court Judge dismissed the criminal complaint against the Debtor, finding that her act had caused Romar not harm. Even the civil jury, which did find her liable for damages, declined to award punitive damages.

Second, while misappropriating trade secrets may be an unlawful act, the Bankruptcy Code provides in Section 523 a method other than denial of confirmation to deal with such acts. If the debt in the case at bar is dischargeable, then any argument regarding this factor is without merit. If the debt is non-dischargeable under Section 523(a)(4), then the Debtor will still owe Romar the unpaid balance of its claim even if the Debtor completely performs her obligations under the plan.

If the Congress of the United States had believed that an act constituting fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny was grounds for dismissal, which will be the necessary consequence of denying confirmation of the chapter 13 plan in this case, then it would have provided for such, and would not have provided for the non-dischargeability of such a debt in Section 523(a)(4).

Romar also argues that the two-party nature of this dispute and the amount of the Debtor's payout in her chapter 13 plan are factors that this Court should consider in addressing the good faith requirement in Section 1325(a)(7).

The existence of a two-party dispute is a factor that Courts have considered in determining whether a chapter 13 plan should be confirmed. It is, however, more correctly considered in the context of whether a plan has been filed in good faith. Further, it is a minor

factor and would never be sufficient by itself for a finding of bad faith. If it were sufficient on its own, then a large percentage of chapter 13 cases would be dismissed out of hand. To the extent it might be relevant, it is only relevant when there are other egregious factors present.

Romar cites In re Herndon, 218 B.R. 821 (Bankr. E.D.Va. 1998) in support of its argument. That opinion considered the importance of the two-party nature of the dispute and the sufficiency of the debtor's payment into the chapter 13 plan. In Herndon, the Court wrote:

> In the instant case, several factors weigh in favor of dismissal: (1) This case was filed literally on the eve of a state court law suit against debtor alleging that she had embezzled a substantial sum. (2) Preliminary evidence in this court suggests the claimant may have a meritorious claim, derived from embezzlement, and debtor has offered no explanation; if the claimant's assertions are established, the claim is not dischargeable in a chapter 7 case. (3) Other than attorney fees owed by debtor for representation in the state court action and her home mortgage (which is current), the only significant debt listed in debtor's bankruptcy petition is the embezzlement claim. This case is essentially a two party dispute. (4) The debtor's proposed 36 month chapter 13 plan will pay a relatively small six percent of the embezzlement claim. Such a nominal payment on a potentially nondischargeable claim is evidence of bad faith.

The facts in the case at bar are dissimilar to those in Herndon.

In Herndon, the debtor filed her bankruptcy petition on the eve of the state court trial. The Court seemed to place significant weight on this fact. See Herndon, 218 B.R. at 825, n. 6.[10] In this case the Debtor contested the civil action through to judgment. And, while she filed her bankruptcy petition during the appeal of the Civil Judgment, it is she, not Romar, who prosecuted the appeal. Further, it is the Debtor who sought relief from the automatic stay to

---

[10] At note 6, the Court wrote:

While the court recognizes that conversion of the case to a chapter 7 would give [the creditor] an opportunity to challenge the dischargeability of her claim, dismissal is more appropriate than conversion because this is in reality a two party dispute, and there is pending state court litigation. Although not requested in [the creditor's] motion, the court has considered dismissing the case with prejudice but finds it unnecessary to do so. Until the state litigation is complete, any future bankruptcy filing by debtor will be suspect unless there has been a marked change of her circumstances.

14

continue the appeal, while Romar opposed relief from the automatic stay.

It appears that the debt in this case, as in <u>Herndon,</u> may be non-dischargeable in a chapter 7 case.  In <u>Herndon</u>, the creditor asserted that the debtor had embezzled funds, an act which would have given rise to a debt that would not have been dischargeable in a chapter 7 case, but would have been dischargeable in a chapter 13 case.  In 2005, however, after <u>Herndon</u> was decided, Congress passed the BAPCPA, in which it amended the Bankruptcy Code to provide that certain additional kinds of debts are non-dischargeable in chapter 13.   If the debt owed by the Debtor is one of those kinds of debts, then the debt will be non-dischargeable and the reasoning in <u>Herndon</u> no longer applies.  If the debt owed by the Debtor is not one of those kinds of debts, then it may be fairly reasoned that Congress considered whether to make that kind of debt non-dischargeable in chapter 13, in which case it must be concluded that Congress does not believe that it constitutes an act of bad faith for a debtor to file a chapter 13 petition when such a debt is owed.

Finally, in <u>Herndon</u>, the debtor's proposed plan was to last 36 months.   In this case, the Debtor's proposed plan is to last 60 months.  Further, the Debtor's payments under the plan in this case constitute more than 19% of the total claims amount, not 6% as in <u>Herndon</u>.

We turn now to the other factors in <u>Leavitt</u> and <u>Love</u>.  The first factor in Leavitt concerns whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner, and whether the debtor has been forthcoming with the Bankruptcy Court and the creditors.

This factor concerns whether the debtor has been honest with the court and creditors, has disclosed all relevant facts in her petition, or has unfairly used the Bankruptcy Code.  This is a

15

factor that this court considers sufficient enough in some cases to warrant dismissal without any other considerations.   A long-standing tenet of bankruptcy law requires a debtor seeking the benefits under that law to satisfy the duty to schedule all one's interests and property rights. Oneida Motor Freight, Inc., 848 F.2d 414, 416 (3rd Cir.1988).   In addition to disclosing all property interests, a debtor must also disclose all transfers and other matters as set out in the debtor's statement of financial affairs.

The Debtor disclosed both the transfer of her residence and the purchase of the vehicle. There is no evidence in this case that the debtor's schedules contain any false information or fails to disclose any required information.  To the extent that this factor is relevant it weighs in favor of the Debtor.

The second factor in Leavitt concerns whether the debtor has a history of filing petitions that were dismissed, only to turn around and file another petition.  The Debtor has filed no previous petitions  in bankruptcy.  This factor does not support a finding of bad faith.

The third factor in Leavitt, whether a debtor filed the petition to defeat state court litigation, the third factor in Love, the timing of the petition, and the fifth factor in Love, the debtor's motives in filing the petition are closely related.  In this case the Debtor contested the civil action through to judgment.  And, as note, it is the Debtor who sought to prosecuted the appeal post-petition.  To the extent that this factor is relevant, it weighs in favor of a finding of good faith.

The fifth factor in Leavitt concerns how the Debtor's actions affected the creditors.  This is more properly discussed in conjunction with the second prong of the test adopted from Tomlin.

Reviewing the factors, there is only one factor that causes this Court to pause, and that is the Debtor's transfer of her house to her husband's father. The house, however, was encumbered by a lien that exceeded the value of the house by more than 20%. The effect of the transfer on creditors was nonexistent. No trustee would attempt to liquidate it for the benefit of creditors. While the court is concerned that the Debtor would effect such a transfer, the transfer is insufficient under the circumstances, standing alone, to support a finding of bad faith.

The purchase of the vehicle is a non-factor in this consideration. If the Debtor had filed a post-petition motion for an order permitting her to purchase the vehicle, the Court would have likely granted the motion in this case. The misappropriation of trade secrets may have been an unlawful act, but if was, Romar's remedy lies in Section 523(a)(4), not in Section 1325(a)(7). The fact that this may be a two-party dispute is not relevant in this case. Many debtors file petitions in bankruptcy to obtain relief from the pressures of two-party dispute. Finally, Romar's assertion that the Debtor is not paying an amount equal to her disposable income is simply false.

So on the one side we have a transfer that will not affect creditors. On the other side we have a number of factors that counsel a finding of good faith. The Debtor fully and accurately disclosed her assets and her financial affairs to the Court and to creditors. She prosecuted the state court litigation through to completion and did not use bankruptcy law to delay or disrupt that litigation. The Debtor filed no previous petitions in bankruptcy and has no history of abusing the bankruptcy process.

This Court concludes that the Debtor has not acted in bad faith prior to, or during the pendency of, this bankruptcy proceeding. On this ground alone, this Court concludes that the

Debtor's chapter 13 plan should be confirmed

B.

We turn now to the second prong of the Tomlin test, which requires that confirmation of a chapter 13 plan should not be denied for the filing of a petition in bad faith unless the debtor engages in egregious behavior that prejudices creditors.

Even if the Court were to conclude that the Debtor had acted in bad faith, it would be required to conclude that none of the acts of the Debtor prejudiced creditors. As noted, the lien on the Debtor's residence was $20,000.00, or 20%, more than the fair market value of the house. Consequently, the transfer has no effect on the amount that the Debtor is required to pay creditors through the plan, the best-interest-of-the-creditors test notwithstanding. As noted, the Debtor's purchase of the car has no effect on payments under the plan. Even if this Court were to find that the Debtor had acted in bad faith, it would confirm the plan because the Debtor's acts have not prejudiced creditors.

C.

This above conclusions are supported by considering some cases in which the debtor was found to act in bad faith. In Love, the debtor, a member of a tax-protest group, failed to file income taxes for five years. When he did file his petition, he under-reported his annual income and failed to disclose three life insurance policies. When the policies were discovered, the debtor did not amend his schedules nor did he provide the policies to the trustee. Further, his plan provided for a payment in full to another creditor's unsecured claim, but only provided for a 16% payout to the IRS on account of the unsecured portion of its claim.

In Eisen, the Circuit Court affirmed the Bankruptcy Court's dismissal of the case under

Section 1307(c) because the debtor filed his petition to frustrate a state court action, submitted contradictory and misleading descriptions of his interest in real property, and failed to disclose an earlier bankruptcy and filed a second Chapter 13 petition shortly after a first.

In <u>Leavitt</u>, the Circuit Court affirmed the Bankruptcy Court's dismissal of the case under Section 1307(c) because the debtor had failed to fully disclose his assets and financial dealings. His initial schedules omitted some assets and undervalued others. His expenses were inflated. His first plan offered nothing to his largest unsecured creditor. When ordered by the bankruptcy court to amend his plan to include at least thirty percent payment to his unsecured creditors, including the largest unsecured creditor, the debtor proposed only a three percent dividend. Finally, the debtor failure to disclose receipt of $36,000.00 and the purchase of a new home during the pendency of the case.

In <u>Love</u>, <u>Eisen</u>, and <u>Leavitt</u>, the debtor acted in bad faith and attempted to deceive the court and creditors by failing to disclose assets, undervaluing assets, disobeying court orders, treating creditors inequitably, and failing to disclose the post-petition receipt of assets. The circumstances and the Debtor's behavior in the case at bar are significantly different from those in Love, Eisen and Leavitt. The distinction supports this Court's finding that the Debtor filed her petition in good faith.

### *Conclusion*

While this Court is concerned by the Debtor's transfer of the Real Property, it is concluded under the totality-of-the-circumstances test, that the transfer, without more, does not constitute an act of bad faith sufficient to deny confirmation of the chapter 13 plan. The Court has no concern regarding the other relevant factors in this case. Even if the Court were to find that the transfer of

the Real Property were an act of bad faith sufficient to deny confirmation under Section 1325(a)(7), the plan would be confirmed because the transfer did not prejudice creditors as required under the second prong of the Tomlin test.

The issue of paramount importance in this case, and the issue of paramount importance to the resolution of the dispute between the Debtor and Romar, is whether the debt arising from the Civil Judgment is of such a nature as to be dischargeable in a chapter 13 case. If the debt is dischargeable, then the acts of the Debtor taken in totality may not be said to rise to the egregious level that Romar would assert. If the debt is non-dischargeable, then Romar will receive a fair, or greater than fair, share of the Debtor's income for the next five years, after which it will still have a claim for the unpaid balance. It is on this issue that this dispute is properly joined, not on the issue of plan confirmation.

It is concluded for purposes of confirmation of the Debtor's plan, that the Debtor filed her petition in good faith as required under 11 U.S.C. § 1325(a)(7).

Upon entry of this Memorandum and Order the Clerk shall forward a copy to Darren W. Bentley, Esq., Lewis E. Goodman, Esq.. and the chapter 13 trustee.

Entered on this 4th day of August, 2009.

_____
William E. Anderson
United States Bankruptcy Judge